Anthony S. Cannatella, Esq. (AC6423)
Christine Marie Wallace, Esq. (CW1700)
Law Offices of Anthony S. Cannatella
53 Orchard Street
Manhasset, New York 11030
Phone No.: (516) 472-7300
Fax No.: (516) 472-7303
acannatella@acannatella.com
cwallace@acannatella.com

*Attorneys for Plaintiffs Judith Smith,*
*David Ezekiel Fairbank and Judith Smith*
*as Co-Trustee of the Nancy A Fairbank,*
*John Taylor Fairbank and Nathaniel*
*David Fairbank Trusts*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUDITH SMITH, derivatively on behalf of 50 East 69th Street Corporation, DAVID EZEKIEL FAIRBANK, derivatively on behalf of 50 East 69th Street Corporation and JUDITH SMITH as CO-TRUSTEE OF THE NANCY A. FAIRBANK, JOHN TAYLOR FAIRBANK AND NATHANIEL DAVID FAIRBANK TRUSTS, derivatively on behalf of 50 East 69th Street Corporation<br><br>        Plaintiffs,<br><br>        v.<br><br>JAMES W. SMITH, III and NANCY K. SMITH;<br><br>        Defendants,<br><br>        -and-<br><br>50 EAST 69TH STREET CORPORATION,<br><br>        Nominal Defendant. | Case No.<br><br><br>VERIFIED COMPLAINT<br><br><br><br>DERIVATIVE CLAIMS FOR:<br><br>   1.  BREACH OF FIDUCIARY DUTY; and<br><br>   2.  GROSS MISMANAGEMENT.<br><br><br>JURY TRIAL DEMANDED |

DERIVATIVE COMPLAINT

Page 1 of 20

Plaintiffs Judith Smith ("Judith"), David Ezekiel Fairbank ("David") and Judith Smith as Co-Trustee of the Nancy A. Fairbank Trust, the John Taylor Fairbank Trust, and the Nathaniel David Fairbank Trust (the "Trusts") (hereinafter Judith, David and the Trusts are collectively referred to as "Plaintiffs"), derivatively on behalf of 50 East 69th Street Corporation (hereinafter referred to as the "Corporation") brings this action against Defendants James W. Smith, III ("James") and Nancy K. Smith ("Nancy") (hereinafter James and Nancy are collectively referred to as "Defendants") for violations of New York State law and alleges the following based upon the investigation of Plaintiffs and their counsel.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this dispute based on 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs will exceed the jurisdictional minimum of $75,000 of this Court.  There is full diversity of citizenship of the Parties in this matter.  This case involves a New York corporation which conducts substantial operations in this jurisdiction. The Plaintiffs herein are, and at all times relevant to this action were, residents and domiciliaries of the state of Mississippi with their last known addresses as 20014 Patton Road, Long Beach, Mississippi 39560. Defendant James W. Smith, III, at all times relevant hereto, was a resident of Maryland with his last known address at: 10111 Bentcross Drive, Potomac, Maryland 20854. Defendant Nancy K. Smith, at all times relevant hereto, was a resident of Connecticut with her last known address at: 122 Palmers Hill Road, Stamford, Connecticut 06902.

DERIVATIVE COMPLAINT                                                      Page 2 of 20

2.      The venue of this matter is proper subject to 28 U.S.C. § 1391(b)(1) and (2).

3.      Venue is proper in this Court. A substantial part of the events or omissions giving rise to the claims alleged occurred in New York County, New York, which is located within this jurisdiction. The major incidents of corporate mismanagement occurred in this jurisdiction. Furthermore, the Corporation is a New York corporation with its principal executive office located at 50 East 69th Street, New York, New York 10021. Because a significant amount of the harm, as well as important evidence, is located within this jurisdiction, this is the best venue for this action.

## THE PARTIES

### A. The Plaintiffs

4.      Plaintiff **JUDITH SMITH**, a resident of 20014 Patton Road, Long Beach, Mississippi 39560, is the owner of six (6) shares of 50 East 69th Street Corporation stock. Judith acquired her shares of 50 East 69th Street Corporation during the 1990's. Judith has continuously owned her 50 East 69th Street Corporation stock at all times relevant hereto, continues to be a 50 East 69th Street Corporation shareholder today, and intends to remain a 50 East 69th Street Corporation shareholder.

5.      Plaintiff **DAVID EZEKIEL FAIRBANK**, a resident of 20014 Patton Road, Long Beach, Mississippi 39560, is the owner of six (6) shares of 50 East 69th Street Corporation stock. David acquired his shares of 50 East 69th Street Corporation during the 1990's. David has continuously owned his 50 East 69th Street Corporation stock at all times

relevant hereto, continues to be a 50 East 69th Street Corporation shareholder today, and intends to remain a 50 East 69th Street Corporation shareholder.

6.      Plaintiff **JUDITH SMITH as CO-TRUSTEE OF THE NANCY A. FAIRBANK TRUST, THE JOHN TAYLOR FAIRBANK TRUST, and THE NATHANIEL DAVID FAIRBANK TRUST**, which were all established in 1998, a resident of 20014 Patton Road, Long Beach, Mississippi 39560, is the owner as Co-Trustee of the Trusts of eighteen (18) shares (6 shares for each trust) of 50 East 69th Street Corporation stock.  Judith as Co-Trustee of the Trusts has continuously owned on behalf of the Trusts 50 East 69th Street Corporation stock at all times relevant hereto, she as Co-Trustee continues to be a 50 East 69th Street Corporation shareholder today, and she as Co-Trustee intends to remain a 50 East 69th Street Corporation shareholder. Nancy A. Fairbank, John Taylor Fairbank and Nathaniel David Fairbank are the children of Plaintiffs, Judith Smith and David Ezekiel Fairbank.

7.      Plaintiffs' allegations in this verified complaint, as they relate to them and their acts, are made upon personal knowledge as to themselves and their acts, and upon information and belief as to all other allegations.

## B.  The Nominal Defendant

8.      Nominal Defendant **50 EAST 69TH STREET CORPORATION** (the "Corporation") is a New York corporation with corporate headquarters located at 50 East 69th Street, New York, New York 10021.  The Corporation is named in this Complaint as a nominal defendant in its derivative capacity, and these shareholders' derivative action is brought on its behalf.  The Corporation is headquartered in and conducts the vast majority of its operations in New York. The Corporation owns and leases real property.

DERIVATIVE COMPLAINT                                                    Page 4 of 20

## C. The Individual Defendants

9.      Defendant **JAMES W. SMITH, III** served as a director of the Corporation since at least 2007 and has served as the Vice President of the Corporation since at least 2011. Defendant, James W. Smith, III, is the brother of Plaintiff, Judith Smith.

10.     Defendant **NANCY K. SMITH** has served as a director of the Corporation and has been the Corporation's Chief Executive Officer since approximately August of 2006. Defendant, Nancy K. Smith, is the mother of Plaintiff, Judith Smith.

## STATEMENT OF FACTS

11.     The Certificate of Incorporation for the Corporation was executed on or about May 16, 1979.

12.     Plaintiffs have been advised by Defendants that there are 200 shares of Class A Voting Stock which have been issued for the Corporation and 1000 shares of Class B Non-Voting Stock which have been issued for the Corporation. The shares of stock are owned, and were owned during the period of time relevant to this action, as follows:

(BALANCE OF PAGE INTENTIONALLY LEFT BLANK)

**Class A Voting Stock**

| Shareholders | Number of Shares Owned |
|---|---|
| James W. Smith Family Trust u/a 8/15/2000 | 90 |
| James W. Smith 2006 Trust | 20 |
| Nancy K. Smith Family Trust | 90 |
| **Total Class A Stocks Issued** | **200** |

**Class B Non-Voting Stock**

| Shareholders | Number of Shares Owned |
|---|---|
| James W. Smith Family Trust u/a 8/15/2000 | 476 |
| James W. Smith 2006 Trust | 203 |
| Nancy K. Smith Family Trust | 171 |
| Peter F. Smith | 26 |
| Lucinda Hay | 6 |
| Constance Plimpton | 12 |
| James Smith, III | 6 |
| Andrew Smith Trust u/a/d December 29, 1998 | 6 |
| James Smith, IV Trust u/a/d December 29, 1998 | 6 |
| Brett William Smith  Trust u/a/d December 17, 1999 | 6 |
| Christopher Plimpton  Trust u/a/d December 29, 1998 | 6 |
| Hollis Plimpton, IV, Trust u/a/d December 29, 1998 | 6 |
| Russell Hay  Trust u/a/d December 29, 1998 | 8 |
| Vivienne Hay  Trust u/a/d December 29, 1998 | 8 |
| Jasmine Hay Trust u/a/d December 29, 1998 | 8 |
| Nancy Fairbank Trust u/a/d December 29, 1998 | 6 |
| John Taylor Fairbank Trust u/a/d December 29, 1998 | 6 |
| Nathaniel Fairbank Trust u/a/d December 29, 1998 | 6 |
| David Ezekiel Fairbank | 6 |
| Judith Smith | 6 |
| Julie Smith | 6 |
| Evan Thomas Smith Trust | 4 |
| Hollis Plimpton, III | 6 |
| **Total Class B Stocks Issued** | **1000** |
| **Total Stocks Issued Classes A and B** | **1200** |

13.     James W. Smith III, Lucinda Hay, Peter F. Smith, Constance Plimpton and Nancy K Smith, while having an individual or beneficial interest in the Corporation also have a significant interest in a corporation named the Center for Specialty Care, Inc. ("CSC").  In fact, those five individuals[1] are the majority holders, if not the owners of all the shares, of CSC.

---

[1] Besides being individual shareholders of the Corporation four of those individuals, James W. Smith III, Lucinda Hay, Peter F. Smith and Constance Plimpton are also the Trustees of the other Trusts that are the

14.     CSC is or was the one and only tenant of the Corporation.

15.     Upon information and belief, Defendant James, one of the shareholders and the Vice President of the Corporation, is and/or was a shareholder and the Vice President of CSC.

16.     Upon information and belief, Lucinda Hay, one of the shareholders of the Corporation, is and/or was a shareholder of CSC. Ms. Hay became the Managing Director of CSC sometime in 2007; and Ms. Hay is and/or was a manager of CSC since 2016.

17.     Upon information and belief, Defendant Nancy, a beneficial owner of the Corporation and Chief Executive of the Corporation, is and/or was a shareholder and Chief Executive of CSC.

## A. Rental of the Real Property Owned by the 50 East 69th Street Corporation

18.     The Corporation owns real property located at 50 East 69th Street, New York, New York 10021 (the "Building").

19.     Upon information and belief, the building contains various pieces of personal property (antiques and furnishings) which are also owned by the Corporation.

20.     The Building and the antiques and furnishings were leased by the Corporation to CSC pursuant to an original lease agreement dated November 1, 1988 (the "Original Lease").

21.     The rent specified in the Original Lease was to be net to the Corporation. Therefore, CSC was to pay all costs, expenses, and obligations, including but not limited to taxes, of any kind relating to the Building which were to come due during the

---

shareholders of the Corporation and parents of the number of children who are the beneficiaries of those trusts. These individuals are also all siblings and siblings of Plaintiff, Judith Smith.

term of the Original Lease.  There were amendments to the Original Lease including without limitation one dated January 1, 2002, which were to set the rental rate at fair market value for the successive terms and options.

22.     Since 2002, the Original Lease with CSC and its amendments were modified by the Defendants various times reducing the proposed rents to significantly below market rents.   These modifications were signed by Defendant James W. Smith III as Director for the Corporation, while he was a shareholder of CSC and possibly its Vice President of CSC.

23.     Upon information and belief, despite the below market rent that was owed by CSC to the Corporation, CSC has failed to pay the rent for their use and occupancy of the Building.

24.     Furthermore, CSC has failed to pay the costs, expenses, and obligations for the Building, including taxes, which they are required to pay pursuant to the lease agreements with the Corporation.

25.     Upon information and belief, CSC is shutting or has shut down its business operations.

26.     In spite of this fact, Defendant James W. Smith III, as Vice President of the Corporation (while a shareholder of CSC and possibly its Vice President), and Lucinda S. Hay, as Manager for CSC entered into a lease termination agreement on or around September 30, 2016 (the "Lease Termination"), pursuant to which the Corporation was to pay CSC Four Million Dollars ($4,000,000).

27.     The Lease Termination made no mention of the unpaid past rent or future rent obligations by CSC to the Corporation.

28.     Moreover, the Lease Termination made no mention of the unpaid and future costs, expenses, and taxes which CSC was supposed to pay pursuant to the lease agreement but which CSC failed to do.

29.     Defendants have not taken any action to recover the unpaid rent, and the unpaid costs and expenses from the tenant CSC.

30.     The Lease Termination has no rational basis for the payment of $4,000,000 to CSC, a tenant that was in significant default of its lease obligations.   The Lease Termination only benefited CSC and its shareholders to the detriment of the Corporation and its shareholders.

## B.  The Corporation's Shareholders' Meeting and Proposals

31.     On or about November 29, 2016, a Notice of a Special Joint Meeting of the Shareholders and Directors of the Corporation was issued by Defendant James W. Smith, III (the "Notice").

32.     This Notice advised the shareholders that a meeting of the shareholders and directors of the Corporation was to be held on or about December 16, 2016[2], regarding six (6) specific proposals:

> i.  Amending the bylaws to decrease the number of directors from three to two and to confirm that the Defendants herein, James W. Smith, III and Nancy K. Smith, have been and still are the directors of the Corporation;
>
> ii. Ratifying and approving the Lease Termination;

---

[2] The meeting was thereafter adjourned until January 20, 2017,

iii. Amending the bylaws to allow the giving of notice of meetings of shareholders by electronic means;

iv. Amending the bylaws to allow the giving of notice of meetings of directors by electronic means;

v. Amending the bylaws to allow one or more shareholders to participate in a meeting of such shareholders by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time; and

vi. Ratifying and approving a resolution to authorize the sale of the Building for a purchase price of not less than Fifty Million ($50,000,000) and otherwise on such terms as the President or Vice-President shall approve.

33.     The Plaintiffs, through their attorney, issued a letter to the attorney for the Corporation dated December 15, 2016 ("Plaintiffs' December Letter") in which they expressed their questions and concerns regarding the various matters which were to be discussed at the special meeting of the Corporations' shareholders and directors, including, but not limited to, the following:

i. What was the Defendants' interests in CSC, including their positions in CSC, if any;

ii. Whether the Defendants would abstain from any vote in which they had a potential conflict of interest;

iii.   What actions have been taken by the Corporation to enforce its rights against CSC for their default in the lease obligations;

iv.   Who authorized the rent concessions to CSC;

v.   Why would there be a payment of $4,000,000 to CSC when CSC has ceased operating and is in default of its lease obligations;

vi.   What all of the Corporation's shareholders' interests are in CSC;

vii.   Whether the Corporation's shareholders that have an interest in CSC would abstain from votes in which there is a conflict of interest;

viii.   Concerns about self-dealing regarding CSC;

ix.   Concerns about how the proposed minimum purchase price was determined;

x.   Whether a market analysis had been performed to reach an asking price;

xi.   Whether shareholders and/or directors have a right to purchase the Building; and

xii.   The lack of safe guards to avoid self-dealing in the sale of the Building.

A copy of the Plaintiffs' December Letter is annexed hereto and made a part hereof as Exhibit "A".

34.     There was no written response to this letter other than adjourning the meeting until January 20, 2017.

35.     The meeting was held on January 20, 2017, regarding the six proposals.

36.     At said meeting Plaintiffs were represented by a proxy given to their counsel.

37.     Additionally, at the meeting, the Defendants and the remaining shareholders were all represented by a separate proxy given to the Corporation's counsel.

38.     At the meeting Plaintiffs, through their proxy, the Plaintiffs' counsel, once again expressed their concerns and questions regarding the shareholder agenda and proposals.

39.     Despite the Plaintiffs' concerns, Defendants' proxy, allegedly consisting of voting shares, voted in favor of all six proposals and thereafter all six proposals passed.

40.     It was also discovered at this meeting that the $4,000,000 Lease Termination payment had already been made by Defendants to CSC in 2016.

## DEMAND ALLEGATIONS

41.     Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

42.     Plaintiffs bring this action derivatively in the right of and for the benefit of the Corporation to redress injuries suffered and to be suffered by the Corporation as a result of the Defendants' breaches of fiduciary duty and gross mismanagement.

43.     Plaintiffs and their counsel will adequately and fairly represent the interests of the Corporation in enforcing and prosecuting its rights.

44.     Plaintiffs were shareholders of the Corporation at the time of the wrongdoing complained of, have continuously been shareholders, and are currently shareholders of the Corporation.

45.     Based upon the Defendants' acts and omissions in direct violation of their fiduciary duties of care, good faith, honesty and loyalty, a pre-suit demand on the Corporation's Board to bring the claims asserted in this action is excused as a futile and useless act.  The Corporation's Board of Directors personally profited from the wrongdoing alleged in this Complaint by way of their interest in the tenant CSC's business.

46.     Plaintiffs have not made a demand on Defendants to investigate and prosecute the wrongdoing alleged herein.  Such a demand is excused because: (i) making a demand would be a futile and useless act as both of the Corporation's Directors are not able to conduct an independent and objective investigation of the alleged wrongdoing; and (ii) the wrongful conduct of Defendants is not subject to protection under the business judgment rule.  Furthermore, the Plaintiffs did voice their concerns (a) in Plaintiffs' December Letter, (b) at the shareholders' meeting held in January via proxy which Plaintiffs provided to their counsel, and (c) since the shareholder's meeting in January by attempting to open discussions with the Defendants regarding those concerns.  Every one of these attempts to address the concerns have been summarily dismissed.  Under such circumstances, the demand requirement is excused since making such a demand on the Board of Directors would be futile.

47.     At the time this derivative lawsuit was commenced, the Corporation's Board of Directors consisted of two (2) directors. These two directors are the Defendants named herein. The Corporation's directors served on the Board of Directors during the period that the Corporation was engaged in the actions alleged in this complaint.

48.     The Defendants herein, the only two directors of the Corporation, also maintain an interest in CSC, the company that is the tenant of the Corporation's real property.

49.     CSC received the benefit of the director's actions which were to the detriment of the Corporation. As a result of the directors' interests in CSC, they were to receive a benefit from their actions as directors of the Corporation while those shareholders who do not maintain an interest in CSC would not receive any benefit and in fact were injured by the actions of the directors of the Corporation.

50.     The Defendants lack the objectivity to judge their own misconduct in this matter and they have interests that are adverse to performing a fair, unbiased investigation into these issues. Therefore, the Defendants are unable to consider such a demand.

51.     Furthermore, the Defendants cannot consider such a demand because their decisions in this matter are not protected business decisions and they face a likelihood of liability for breaching their duty of loyalty to the Corporation.

52.     Plaintiffs have expressed their concerns regarding the Defendants' conflicts of interest regarding the tenant of the Corporation's real property and any business decisions made regarding said tenant but no action has been taken by Defendants to account

for the conflict.  Since the Defendants have failed to act to correct their conflict of interest they are not disinterested in the transaction and so demand is excused.

53.     In their positions as directors the Defendants approved the $4,000,000 lease termination payment to the tenant without any disinterested party being included in the decision making and despite Plaintiffs' objections.  This decision violated the Defendants' duty of care and duty of loyalty, thus creating a substantial likelihood that the Defendants will be found liable for the misconduct set forth in this Complaint.

54.     Despite the Directors having knowledge of the failure of the tenant to pay rent to the Corporation they have taken no action to recover the current and future unpaid rent and other lease obligations and cannot be relied on to do so since they are not independent when making a decision that should be in the best interests of the Corporation.

## FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

55.     Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

56.     Each of the Defendants owed the Corporation fiduciary obligations including the obligation of good faith, fair dealing, loyalty, and due care.

57.     Defendants were and are required to use their abilities to control and manage the Corporation in a fair, just and equitable manner to refrain from abusing their positions of control, and to not favor their own interests at the expense of the Corporation.

58.     Defendants violated their fiduciary duties to the Corporation, including but not limited to their duties of care, good faith, and loyalty by renting the Building at substantially below market rent; not taking action against CSC for unpaid and

future rent, costs, expenses and taxes; agreeing to pay CSC $4,000,000 despite CSC's default of its lease obligations; not abstaining from any shareholder and/or director votes in which they had a potential conflict of interest; among other actions.

59. These actions could not have been a good faith exercise of prudent business judgment.

60. The Defendants engaged in conduct that harmed the Corporation and failed to refrain from self-dealing since both Defendants had and continue to have an interest in CSC.

61. The Defendants failed to put the Corporation's interests above their personal interests.

62. The wrongful conduct particularized herein was not due to an honest error in judgment, but rather to Defendants' gross mismanagement, bad faith, and/or reckless disregard of the rights and interests of the Corporation and its shareholders and for acting without the reasonable and ordinary care which they owed the Corporation.

63. As a result of the foregoing, Defendants have participated in harming the Corporation and have breached the fiduciary duties owed to the Corporation.

64. The conduct outlined herein was not due to an honest error of judgment, but rather was due to Defendants' bad faith and was done knowingly, willfully and/or intentionally.

65. By reason of the foregoing, the Corporation has sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law but for which Plaintiffs, as shareholder representatives of the Corporation, seek an accounting of the acts of the directors and an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## GROSS MISMANAGEMENT

66.     Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

67.     As detailed more fully herein, Defendants each have and had a duty to the Corporation and its shareholders to prudently supervise, manage and control the Corporation's operations.

68.     The Defendants, by their actions, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and duties with regard to prudently managing the assets of the Corporation in a manner consistent with the operations of a closely held corporation.

69.     The Defendants entered into multiple below market modifications to leases with CSC a corporation in which both of the Defendants have an interest.

70.     Furthermore, Defendants entered into a $4,000,000 lease termination agreement with CSC and made payment to CSC despite CSC's outstanding obligations to the Corporation and the fact that CSC was winding up business and would not need the space any more, all of which are facts that, upon information and belief, were known or should have been known by Defendants.

71.     As a proximate result thereof, the Corporation has been damaged and will continue to suffer damages, and has sustained and will continue to sustain irreparable injury.

72.     Plaintiffs, as shareholder representatives of the Corporation, seek an accounting of the acts of the directors and an amount to be determined at trial.

DERIVATIVE COMPLAINT                                                    Page 17 of 20

WHEREFORE, Plaintiffs, on behalf of themselves and 50 East 69th Street Corporation, pray for judgment as follows:

1.      Awarding compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial;

2.      Awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein;

3.      Awarding appropriate equitable relief, including, without limitation, compelling an accounting by the Defendants regarding their acts and any injunctive or declaratory relief necessary to change and/or reform the Corporation's corporate governance, policies and culture;

4.      Awarding punitive damages at the maximum amount permitted by law;

5.      Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs; and

6.      Awarding such other relief as this Court may deem just and proper.

Dated:  August 31, 2017

> LAW OFFICES OF ANTHONY S. CANNATELLA
> *Attorneys for Plaintiffs Judith Smith,*
> *David Ezekiel Fairbank and Judith Smith as Co-*
> *Trustee of the Nancy A. Fairbank, John Taylor*
> *Fairbank and Nathaniel David Fairbank Trusts*
>
> By: _____
>    Anthony S. Cannatella (AC6423)
>    53 Orchard Street
>    Manhasset, N.Y. 11030
>    516.472.7300

DERIVATIVE COMPLAINT

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues which are subject to adjudication by a trier of fact.

Dated:  August 31, 2017

LAW OFFICES OF ANTHONY S. CANNATELLA
*Attorneys for Plaintiffs Judith Smith,*
*David Ezekiel Fairbank and Judith Smith as Co-*
*Trustee of the Nancy A. Fairbank, John Taylor*
*Fairbank and Nathaniel David Fairbank Trusts*

By:_____
Anthony S. Cannatella (AC6423)
53 Orchard Street
Manhasset, N.Y. 11030
516.472.7300

DERIVATIVE COMPLAINT                                                    Page 19 of 20