UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUDITH SMITH, *derivatively on behalf of 50 East 69th Street Corporation*; DAVID EZEKIEL FAIRBANK, *derivatively on behalf of 50 East 69th Street Corporation*; and JUDITH SMITH as CO-TRUSTEE OF THE NANCY A. FAIRBANK, JOHN TAYLOR FAIRBANK AND NATHANIEL DAVID FAIRBANK TRUSTS, *derivatively on behalf of 50 East 69th Street Corporation*,

         Plaintiffs,

-v-

JAMES W. SMITH, III; NANCY K. SMITH; LUCINDA SMITH HAY; and CENTER FOR SPECIALTY CARE, INC.,

         Defendants,

-and-

50 EAST 69th STREET CORPORATION,

         Nominal Defendant.

17 Civ. 6648 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

  This decision resolves plaintiffs' motion for attorneys' fees and costs incurred in this shareholder derivative action.

**I.  Background**

  The Court assumes familiarity with the facts and procedural history of this case, including as set forth in its April 19, 2019 summary judgment decision, which supplied a detailed history of this litigation and the parties' underlying disputes. *See* Dkt. 72 ("MSJ Op."). Relevant here, that decision granted summary judgment to defendant Center for Specialty Care ("CSC"), and to the individual defendants on plaintiff-shareholders' claim that defendants had breached their fiduciary duty to 50 East 69th Street Corporation ("50 East") by amending retroactively the

terms of 50 East's lease agreement with CSC so as to charge reduced, and allegedly below-market, annual rents. The Court denied, however, the individual defendants' bid for summary judgment on plaintiffs' separate claim that these defendants had breached their fiduciary duty to 50 East and its shareholders by causing 50 East to make a $3.73 million "lease termination payment" to CSC. As plaintiffs noted, because CSC had already breached the terms of its lease with 50 East so as to justify 50 East's terminating it, there was no need for 50 East to pay CSC to induce it to terminate the lease early. Plaintiffs argued that the payment was instead motivated by the individual defendants' desire to fund CSC so that it could repay debts that it owed to some of them. Recognizing that this claim was supported by formidable evidence, the Court permitted it to stand and reach a jury.

Following the summary judgment decision, CSC voluntarily paid 50 East $4,245,727.40, representing the $3.73 million lease termination payment plus "interest at a rate of 5%." *See* Dkt. 83. The parties then filed a joint letter setting forth their views on the issues that the Court's summary judgment ruling and CSC's payment had left unresolved. Dkt. 85. In response, the Court issued an order stating that "[a]lthough plaintiffs identify other ostensible open issues, the only one identified that appears to the Court to be within the scope of this case concerns plaintiffs' entitlement to attorneys' fees." Dkt. 86. The Court set a briefing schedule "to address and resolve the issue of plaintiffs' entitlement to attorneys' fees." *Id.*

On September 24, 2019, plaintiffs filed a motion for fees and a supporting memorandum of law and exhibits. Dkt. 87 ("Pl. Mem."). On October 7, 2019, defendants filed a memorandum of law in opposition. Dkt. 88 ("Def. Mem."). On October 14, 2019, plaintiffs filed a reply. Dkt. 89 ("Pl. Reply").

**II.    Discussion**

The Court first resolves plaintiffs' request for attorneys' fees. The Court then addresses plaintiffs' request for prejudgment interest. Finally, the Court addresses plaintiffs' request for a declaratory judgment.

**A.    Attorneys' Fees**

**1.    Entitlement to Fees**

Plaintiffs seek attorneys' fees for having obtained a benefit for 50 East—the repayment to 50 East of the $3.73 million plus interest—through their derivative suit. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 390–93, 396–97 (1970). Defendants concede that a fee award is appropriate in light of plaintiffs having catalyzed this beneficial outcome for 50 East, but dispute the amount that plaintiffs are due given that a substantial portion of plaintiffs' claims (those relating to the lease renegotiations) were rejected at summary judgment. Def. Mem. at 5–6.

The Court agrees with all parties that plaintiffs are clearly entitled to attorneys' fees under the common-benefit doctrine, which "often applies 'in shareholder derivative actions, to award fees indirectly against other shareholders benefitting from the law suit by taxing the nominal corporate defendant.'" *In re Citigroup S'holder Derivative Litig.*, No. 12 Civ. 3114 (JPO), 2013 WL 4441511, at *3 (S.D.N.Y. Aug. 19, 2013) (quoting *Christensen v. Kiewit-Murdock Inv. Corp.*, 815 F.2d 206, 211 (2d Cir. 1987)), *aff'd sub nom. Moskal v. Pandit*, 576 F. App'x 33 (2d Cir. 2014); *see also Mills*, 396 U.S. at 396–97; *Koppel v. Wien*, 743 F.2d 129, 134–35 (2d Cir. 1984); *Brautigam v. Bratt*, No. 98 Civ. 9060 (JSM), 2000 WL 1264289, at *1 (S.D.N.Y. Sept. 5, 2000). The issue is the proper amount of the fee award.

**2.    Plaintiffs' Reasonable Fees**

"The district court retains discretion to determine . . . what constitutes a 'reasonable' fee." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998). The starting point for

3

this analysis is the "presumptively reasonable fee," or lodestar, which is calculated by multiplying a reasonable hourly rate by the reasonable number of hours required by the case. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation provides an "initial estimate" or "rough approximation" of the reasonable fee. *See Perdue*, 559 U.S. at 556; *Hensley*, 461 U.S. at 433.

"In determining what fee is reasonable, the court takes account of claimed hours that it views as excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks omitted). In doing so, a court may properly draw on its "first-hand knowledge of [the] litigation and its extensive contact with the parties." *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997). Where the Court finds the number of hours stated disproportionate to the work performed, the Court should reduce the stated hours accordingly. *See Hensley*, 461 U.S. at 434; *Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002).

"'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney[s]' fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (citing *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir. 2005); *Pino v. Locascio*, 101 F.3d 235, 237–38 (2d Cir. 1996)). "Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount,' even if plaintiff's 'claims were interrelated, nonfrivolous, and raised in good faith.'" *Williams v. Epic Sec. Corp.*,

368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) (quoting *Hensley*, 461 U.S. at 436).  *But see Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724 (PGG), 2010 WL 451045, at *3 (S.D.N.Y. Feb. 9,2010) ("Work on ultimately unsuccessful claims is compensable as long as those claims are not 'wholly unrelated' to the claims plaintiff succeeded on at trial," although "[a] downward adjustment may still be appropriate . . . when a plaintiff succeeded on only some of his claims for relief." (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (internal quotation marks and citations omitted)).  However, "[t]here is no precise rule or formula" for assessing the reasonableness of fees.  *Hensley*, 461 U.S. at 436.

Where the lines between time spent on successful versus unsuccessful claims are "blurry[,] a court need not become enmeshed in a meticulous analysis of every detailed facet of the professional representation to determine the proper award, nor should a request for attorney[s]' fees result in a second major litigation."  *Mugavero*, 2010 WL 451045, at *3 (internal quotation marks, citations, and alterations omitted).  Rather, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks omitted)); *see also Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *COR, LLC v. First Standard Fin. Co., LLC*, No. 17 Civ. 2190 (PAE), 2019 WL 1090480, at *3 (S.D.N.Y. Mar. 8, 2019).  That is because "it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Amato v.*

*City of Saratoga Springs*, 991 F. Supp. 62, 66 (N.D.N.Y. 1998) (citing *Clarke v. Franke*, 960 F.2d 1146, 1153 (2d Cir. 1992)); *see also Luciano*, 109 F.3d at 117.

Here, plaintiffs' counsel seek a total of $146,809 in attorneys' fees, reflecting 423.25 hours of legal work, plus $9,723.20 in costs, for a total of $156,532.20.[1] This sum reflects the entire amount paid by their clients.[2] Defendants do not contest "the reasonableness of the hourly rates charged by [p]laintiffs' counsel," Def. Mem. at 9, but argue that the Court should award only 25% of the requested fees because only one of plaintiffs' claims—regarding the ostensible "lease termination payment" that 50 East chose to pay to CSC—survived summary judgment, *id.* at 10.

Defendants are correct that plaintiffs advanced multiple, distinct claims and, on these claims, originally sought to recover a total of $27 million in damages. Defendants are also correct that on summary judgment, the Court dismissed the set of claims that stood to secure the majority of these damages: for 50 East's repeated, and allegedly improper, reductions of CSC's rent. Plaintiffs had sought approximately $14 million in damages on these claims. Instead, the Court held that only one of plaintiffs' claims could reach a jury: their claim that 50 East had elected needlessly to pay the $3.73 million "lease termination payment" to tenant CSC, which was owned by family members of the majority owners of 50 East. On this claim, the Court held, factual disputes, "as to which a jury's assessment of witness credibility may prove decisive,"

---

[1] "[Attorney] Anthony Cannatella worked as counsel for 196 hours at a rate varying from $395 to $415 per hour for a total of $79,675 . . . [attorney] Christine Wallace worked as counsel for 219 hours at a rate varying from $295 to $305 per hour for a total of $64,790.00 . . . [and] Kaitlin Zask worked as legal assistant for 8.25 hours at a rate of $155 per hour plus expenses for a total of $2,344." Pl. Mem. at 10.

[2] In response to defendants' contention that not all of these fees were in fact billed to plaintiffs, Def. Mem. at 9–10, plaintiffs explain that $7,171.41 in costs were invoiced directly by third party providers, Pl. Reply at 3.

precluded entry of summary judgment.  *See* MSJ Op. at 31.  Reasoning that the $3.73 million ultimately returned to 50 East represents 13% of the total damages sought by plaintiffs, and 21% "of the two claims . . . analyzed in depth" in the Court's summary judgment opinion, defendants argue that "an award of no more than 25% of the amount [plaintiffs'] counsel billed is more than commensurate with any claimed benefit to 50 East."  Def. Mem. at 10.

The Court agrees with defendants that, given plaintiffs' mixed record in this litigation, some reduction is warranted from plaintiffs' bid to recoup all their fees.  The Court, however, does not agree that a reduction nearly as drastic as defendants urge is in order.  That is so for two reasons.

First, plaintiffs' recovery of nearly $4.25 million for 50 East was a consequential achievement.  It is undisputed that this money would not have been repaid to 50 East absent plaintiffs' counsel's vigorous prosecution of this lawsuit.  And while the Court found that issues of credibility required that the determination of liability on this claim be resolved by a jury, the evidentiary record put plaintiffs in a strong position to prevail on this claim.  Plaintiffs' counsel developed solid, if not compelling, evidence of self-dealing by 50 East's majority owners.  This evidence would have permitted a jury easily to find that, for personal reasons as opposed to the pursuit of the best interests of 50 East, these majority owners had chosen to pay 50 East's tenant CSC, owned by their family members, a multi-million dollar "lease termination payment" that was arguably unnecessary given CSC's material breach (for non-payment of rent) of its lease with 50 East.  In the face of this evidence, it is little surprise that defendants wholly capitulated on this claim following the summary judgment decision.  Plaintiffs' counsel achieved this outcome in the face of this vigorous, and high-quality, lawyering by estimable defense counsel.

7

Second, the Court's judgment—drawing on its detailed familiarity with this longstanding litigation—is that the various claims that plaintiffs pursued were interwoven, and inextricably so. The two claims arose from the same broad narrative involving the rental history of 50 East 69th Street involving tenant CSC. Further, deposition witnesses, and to some degree documents, were common to both plaintiffs' unsuccessful rent renegotiation claims and plaintiffs' viable lease-termination-payment claim. Defendants' implicit thesis that the work that plaintiffs' counsel performed on the two claims was hermetically separate is incorrect. To be sure, some evidence related uniquely to the unsuccessful claims, and significant hours were devoted to unsuccessful advocacy in support of those claims. In the end, though, a significant amount of the total time plaintiffs' counsel spent on this matter would have been necessary even had counsel, from the get-go, pursued only the one viable claim. And there is no indication—and defendants have not so argued—that any of the litigation in this matter was brought in bad faith.

All factors considered, and viewing the reasonable fee holistically and not by a line-item-by-line-item assessment of plaintiffs' counsel's time entries, the Court's judgment is that a reasonable fee award in this case would compensate plaintiffs' counsel for 75% of the hours worked and costs incurred, for a total award of $117,399.15. The Court awards that sum to plaintiffs.

### B.    Prejudgment Interest

Plaintiffs next seek an additional payment of 4% interest on the $3.73 million paid to 50 East, which would bring the total amount of interest paid by defendants to 9%. Plaintiffs contend that this is appropriate because New York, by statute, sets the rate for prejudgment interest at 9%. Pl. Mem. at 11–13 (citing N.Y. CPLR § 5001). This claim is easily set aside.

New York's Civil Practice Laws and Rules ("CPLR") § 5001, entitled "[i]nterest to verdict, report or decision," provides that:

> Interest shall be recovered *upon a sum awarded* because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

CPLR § 5001(a) (emphasis added). In this case, prejudgment interest is not available to plaintiffs for the simple reason that there has been no "sum awarded" by the Court. The Court did not resolve liability on any claim in plaintiffs' favor. Rather, following the Court's summary judgment decision, defendants chose to moot the sole unresolved claim by repaying 50 East the full $3.73 million lease termination payment that plaintiffs challenged on behalf of 50 East. Because there has been no judgment for plaintiffs, there is no statutory charter for an award of prejudgment interest. The Court therefore denies this request.

### C. Declaratory Relief

Finally, the Court considers plaintiffs' request for a declaratory judgment. In their motion for attorneys' fees, plaintiffs request, without elaboration, "a declaratory judgment on whether the balance of the issues have been deemed moot as a result of the repayment, whether the interest on the payment acknowledged by this Court is prejudgment interest for the breach of fiduciary duty, and whether the Lease Termination Agreement is void." Pl. Mem. at 5. Defendants object that this request seeks a procedurally improper advisory opinion. Def. Mem. at 12–13. In their reply, plaintiffs argue that "[e]very final judgment should, 'grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings,'" Pl. Reply at 5 (quoting Fed. R. Civ. P. 54), and that "[d]eclaratory relief may be granted if doing so serves a useful purpose," *id.*

The Court does not find the entry of declaratory relief warranted here. Rule 54 is inapposite because the Court has not rendered a "final judgment" as to the merits of the sole remaining claim in this case. *See* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). Defendants mooted that issue by paying 50 East the entire sum at issue—the $3.73 million that 50 East had previously paid to CSC as an ostensible lease termination payment. Defendants' action disposed of plaintiffs' surviving derivative claim, which sought solely money damages. And having now resolved the question of attorneys' fees, the litigation of this matter is complete.[3]

Plaintiffs nevertheless contend that "many issues" remain "unresolved." Pl. Reply at 5. In the lay sense, that is surely so. But the Court's role is not to answer abstract questions but to resolve cases and controversies. Defendants' payment of the entire sum sought here has mooted any controversy, along with any need for the Court to resolve the now-abstract questions that plaintiffs wish answered about the propriety of defendants' historical conduct. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011) ("The Declaratory Judgment Act does not expand the subject matter jurisdiction of the federal courts . . . the Supreme Court [has] explained that the phrase '[in a] case of actual controversy' in the Act refers to the type of Cases and Controversies that are justiciable under Article III." (internal quotation marks omitted) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007))), *aff'd*, 568 U.S. 85, 133 (2013). With the payment of the $3.73 million plus interest, and the later sale of the building, the Court is confident that defendants have met their "formidable burden" of showing that their "voluntary

---

[3] Plaintiffs raise for the first time in their motion for attorneys' fees the question of "whether the Lease Termination Agreement is void." Pl. Mem. at 5. It is far too late to ask the Court to address this question, which was neither raised in plaintiffs' complaint nor addressed in the summary judgment litigation.

10

compliance moots [this] case" because "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Finally, because this litigation solely raised backward-looking questions about defendants' stewardship of 50 East, there are no issues fairly raised about plaintiffs' or defendants' rights or responsibilities going forward. Plaintiffs' request for a declaratory judgment is therefore denied.

## CONCLUSION

For the reasons stated above, the Court awards plaintiffs $117,399.15 in reasonable attorneys' fees, denies plaintiffs' request for an award of prejudgment interest, and declines to issue a declaratory judgment. The Clerk of Court is respectfully directed to terminate the motion pending at docket 87 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 22, 2020
   New York, New York